# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**TRIGINAL D. JACKSON,**

    **Plaintiff,**

**v.**                                                          **No. Civ. 09-0054 WJ/RHS**

**MDC; MDC MEDICAL; DR. B;**
**C/O GEORGLYE; NURSE CHARLES;**
**LT. (Heavy Set Female); ROSEANNE; TB TEST NURSE (Female);**
**MALE INTAKE NURSE; 4 to 5 C/O,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Metropolitan Detention Center's ("MDC") Motion to Dismiss, filed April 27, 2009 (Doc. 25); and on Defendant Correctional Medical Services'[1] ("CMS") Motion to Dismiss, filed December 1, 2009 (Doc. 45), which are both brought pursuant to FED. R. CIV. P. 12(b)(6). Because he is proceeding *in forma pauperis* ("IFP"), the Court also reviews pro se plaintiff Triginal D. Jackson's Complaint under 28 U.S.C. § 1915(e)(2)(B) (providing that the Court must dismiss a complaint submitted by a plaintiff proceeding IFP "at any time if the Court determines that . . . the action . . . is frivolous or malicious; [] fails to state a claim on which relief may be granted, or [] seeks monetary relief against a defendant who is immune from such relief"). Having reviewed the parties' submissions, the record, and the relevant law, the Court will grant CMS's motion in part, dismiss the Complaint with prejudice for failure to state a claim, and deny MDC's motion as moot.

## I. ALLEGATIONS IN THE COMPLAINT.

---

[1] Although Jackson referred to CMS, which provides medical services to the MDC, as "MDC Medical" in his Complaint, CMS has informed the Court and Jackson of its correct legal name.

Jackson was incarcerated at the MDC on February 3, 2008. Complaint 2. He refused to take a TB test and states he was kept in "booking" in a one-man cell for three days with only "bag lunches" and no opportunity for a shower. *Id.* When the "TB test nurse" told him he would have to take a TB test, he refused. *Id.* Because he refused TB testing, he was then restricted to a "picture window" "T.B. cell" on orders from "Dr. B" and was not allowed to leave, to read books, to go to the canteen, or to use the phone. *Id.* at 2, 3.

Although he states that "Roseanne" the "grievance lady" refused to file his complaints and did not respond to them, *see id.* at 2, 3, he has attached to his Complaint two "grievances" filed on February 20, 2008 and February 28, 2008. *See* Complaint, Exs. 3, 4. The February 20 grievance complains that the MDC is denying Jackson's access to bail and to hygiene products and that the TB test violates his 4th Amendment rights. *See id.* Ex. 3. The February 28 grievance states that "the black male nurse" had officer Georglye and two other guards "remove reading material" and that the black male nurse states that Jackson cannot "have books, use phone, go to law library, or receive canteen" because Jackson was "in isolation." *Id.* Ex. 4. But Jackson states in his Complaint that "later commissary issue was dropped." Complaint at 3. Further, Jackson states that he "filed grievance and had grievance denied by Roseanne." *Id.* at 5.

After another arrest on September 1, 2008, Jackson refused to allow medical employees to perform an intake medical exam. Complaint at 2. An unnamed female "Lt." came in and asked to talk with him and "hit[ him] lightly" and told him "they are going to take [your] vitals." *Id.* at 2, 3. He refused, so she and another guard "push[ed him] against the wall and then [took him] down to the floor," and 4-5 more guards then handcuffed him and the "intake nurse put[] foot in [Jackson's] face." *Id.* at 2, 3. "Dr. B" came, and the medical employees took his blood pressure. *Id.* at 3. Employees refused to give him a complaint form because he was in "hold" and not in "jail." *Id.* at

2

2.

## II. APPLICABLE LEGAL STANDARD.

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure in a § 1983 cause of action.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (applying *Bell Atlantic Corp. v. Twombly* in a case brought under § 1983). The Tenth Circuit emphasized that

> 'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Id.* (internal quotation marks, citation, and footnote omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atlantic v. Twombly*, 127

> S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*
>
> The Third Circuit has noted, and we agree, that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case. . . ." *Phillips*, 515 F.3d at 231-32. A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time.
>
> \* \* \* \*
>
> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." *Anderson*, 483 U.S. at 646 n. 6, 107 S.Ct. 3034; *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S.Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Robbins*, 519 F.3d at 1248-49. Thus, in cases in which government actors are also sued in their individual capacities and the plaintiff alleges violation of his constitutional rights, such as due-process rights, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (emphasis in original). The Court applies this same standard in its review under § 1915(e)(2). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

"The core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an

4

actionable constitutional violation." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). Because Jackson proceeds pro se, the Court liberally construes his Complaint. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). He is still required, however, to make factual allegations to establish plausibility. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them. *Id.* at 1951. Then it "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949.

**III.   ANALYSIS**

The Court will begin with a review of Jackson's Complaint under § 1915(e)(2)(B). Jackson's federal complaint asserts seven counts. Count 1 states: "False Imprisonment: by means of abuse or threatened abuse of law or the legal process, Intentional infliction of emotional distress, Harassment, False light/defamation, and Defamation deprivation by indifference." Complaint at 3. He brings this count against Dr. B and the MDC guards who placed him in the "picture window cell used for TB inmates" and denied him "the right to leave my cell." *Id.* As a matter of law, Jackson's allegations do not state a claim for any of the state-law torts alleged in Count 1. He states no facts to show that he was unlawfully incarcerated and had no "right" to leave the cell, and he chose to be placed in a cell that isolates prisoners who refuse to take a TB test from other prisoners. Count 1 shall be

dismissed against all Defendants with prejudice for failure to state a claim because amendment would be futile.

Count 2 asserts violation of the Fourteenth Amendment by "intentional infliction of emotional distress" caused by "Charles male black nurse" and officer Goerglye temporarily denying "reading material, phone, and the right to come out [sic] my cell." Complaint at 3. He seeks to hold "Dr. B" liable because he "approved." *Id.* Again, Jackson did not have a constitutional right to leave or to have a phone or reading materials while isolated in a cell for medical purposes. Count 2 shall be dismissed with prejudice against all Defendants for failure to state a claim because Jackon's allegations, under the circumstances of medical isolation, do not show a condition of confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Count 3 asserts: "assault and battery excessive force Intentional infliction of emotional distress." Complaint at 3. Jackson bases these claims on the facts that (i) "guards chained/ and unchained me up placed me in a one man cell" during the September 2008 incarceration; (ii) the female lieutenant came to talk with him after he refused to allow his "vitals" to be taken and "start lightly hitting" him and then pushed him "against the wall," took him "down to the floor," and handcuffed him with the assistance of 4-5 other officers; (iii) the intake nurse put his foot in Jackson's face during this struggle; and (iv) Dr. B and his staff then took Jackson's blood pressure.

> "After incarceration," the Eight Amendment prohibits "the unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). The "core inquiry" for an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). The Tenth Circuit has articulated two "prongs" that a plaintiff must show to prevail on such a claim: (1) that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and (2) "that the officials acted with a sufficiently culpable

> state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks omitted). We can infer malicious, sadistic intent from the conduct itself where "there can be no legitimate purpose" for the officers' conduct. *Id*. at 1213.

*Serna v. Col. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006). Jackson's Complaint demonstrates, as a matter of law, that none of the Defendants committed an Eighth-Amendment or state-law violation regarding excessive force, unlawful touching, or intentional infliction of emotional distress. The Defendants' actions were all taken in response to Jackson's acts of resistance and pursuant to his lawful incarceration. No facts suggest that their actions were unreasonable or excessive. Jackson does not contend that he was injured during the struggle. And while he may have experienced momentary pain by having been taken down to the floor and forcibly handcuffed, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.* As to Jackson's contention that the female Lieutenant began to "hit him lightly" as she told him he would have to submit to the medical examination, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotation marks omitted). Accepting Jackson's allegations as true, the Lieutenant's use of force was in direct response to Jackson's belligerence, and was a *de minimis* use of force that obviously was not intended to cause pain but

rather, to encourage Jackson's cooperation. Jackson cannot state constitutional or state-law claims for assault and battery, excessive force, or intentional infliction of emotion distress because the touchings he describes were either lawful or were either *de minimis* or reasonable uses of force under the circumstances. The claim must be dismissed with prejudice because amendment would be futile.

Count 4 states: "Denial of right to complain, Intentional infliction of emotional distress," and is related to the prison's administrative grievance process. Jackson complains that he could only get grievance forms from Roseanne instead of from the guards, and that she told him "she will not allow me to submit a grievance because it is and [sic] security issue." Complaint at 3. He complains that the way his grievances were handled violates due process because he had to file grievances to exhaust his administrative remedies. *See id.* But because Jackson's Complaint establishes that he was in fact allowed to file grievances, he has not stated a violation of due process, and no facts support a state-law claim for intentional infliction of emotional distress. This claim must be dismissed with prejudice because amendment would be futile.

Count 5 is for: "Due process: invasion of privacy" and alleges that Jackson's right to privacy was violated by medical staff ordering the guards to take reading materials from Jackson while in medical isolation, and by having to "dry [his] body in a cell that allowed any passerby to look at me." Complaint at 3. Reading is not a privacy right. Further, prisoners lose most of their privacy rights while incarcerated, and Jackson's complaint shows that he was given a towel to dry with that he could use to cover his body if a passerby in the isolation area happened to pass his window when he was drying off. These facts do not state a claim for violation of Jackson's right to privacy as a matter of law, and the claim must be dismissed with prejudice, as amendment would be futile.

Count 6 states: "civil liberties, vicarious liability, contributory negligence, enterprise liability, and intentional infliction of emotional distress." Complaint at 3. Jackson contends that the officers

8

were not properly trained based on his incorrect opinion that "there is no law that states inmates are not allowed reading materials;" and he cites Title VI of the Civil Rights Act of 1964 regarding the jail's failure to respond to his grievances in this claim. As a matter of law, the allegations in Jackson's Complaint do not state a claim for any of these alleged torts or theories, and amendment would be futile.

Count 7 states: "Discrimination, profiling" based on his speculation that, because he is not from New Mexico, he was "treated unfairly" and his "rights were taken away" from him. Nothing in Jackson's Complaint shows unlawful discrimination because of race or color, however and it does not state a claim for violation of constitutional or federal rights. Further, Jackson's factual allegations demonstrate that his placement in a isolation TB cell was based on his decision not to have a TB test. The claim must be dismissed with prejudice because amendment would be futile.

Because Jackson's Complaint is bereft of sufficient facts to state a viable claim for violation of his constitutional rights or of federal or state law, Jackson's complaint must be dismissed under Rule 12(b)(6) and § 1915(e)(2)(B)(ii). *See Robbins*, 519 F.3d at 1248-49. MDC's and that part of CMS's pending motions seeking dismissal of Jackson's state-law claims because he failed to comply with the notice provisions of the New Mexico Tort Claims Act, therefore, shall be denied as moot.

**IT IS ORDERED** that CMS's and its medical staff's Motion to Dismiss (Doc. 45) is GRANTED in part; MDC's Motion to Dismiss (Doc. 25) is DENIED as moot; and Jackson's Complaint is Dismissed for failure to state a claim.

_____
UNITED STATES DISTRICT JUDGE